# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:21-cv-22441-SCOLA/GOODMAN

_____

DONALD J. TRUMP, et al.,

                              Plaintiffs,

v.

TWITTER, INC., and JACK DORSEY,

                              Defendants.

_____

## DEFENDANT TWITTER, INC.'S
## MOTION TO TRANSFER TO THE NORTHERN
## <u>DISTRICT OF CALIFORNIA AND MEMORANDUM IN SUPPORT THEREOF</u>

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 1

    A.    Twitter's User Agreement ............................................................... 1

    B.    This Litigation .............................................................................. 3

LEGAL STANDARD ................................................................................................. 5

ARGUMENT ............................................................................................................. 6

I.    The Court Should Transfer This Case Before Taking Any Other Action On Plaintiffs' Complaint ................................................................................. 7

II.    Plaintiffs' Claims Are Governed By A Valid Forum Selection Clause ............................. 7

    A.    Plaintiffs Entered Into A Valid Contract With Twitter ....................................... 7

    B.    The User Agreement Contains A Mandatory Forum Selection Clause ................ 9

    C.    The Claims Here Are Within The Forum Selection Clauses's Broad Scope ......... 9

III.    The § 1404 Analysis Requires Transferring This Case To California ............................ 12

    A.    The Northern District Of California Is An Adequate Alternative Forum ............ 12

    B.    The Public Interest Factors Do Not Justify Ignoring The Forum Selection Clause ...................................................................................... 13

CONCLUSION ......................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*America Online, Inc. v. Booker*,
    781 So. 2d 423 (Fla. Dist. Ct. App. 2001).................................................................. 13,

*Atlantic Marine Construction Co. v. U.S. Dist. Court for Western Dist. of Texas*,
    571 U.S. 49 (2013)........................................................................................ passim

*Beckerman v. Heiman*,
    2006 WL 1663034 (S.D.N.Y. June 16, 2006) .............................................................. 14

*Birdwell v. Royal Caribbean Cruise, A/S*,
    1985 WL 66 (S.D. Fla. Sept. 25, 1985)..................................................................... 10

*Brengle v. ITF Ltd.*,
    2018 WL 5279359 (M.D. Fla. Oct. 24, 2018) .............................................................. 7

*Brittain v. Twitter Inc.*,
    2019 WL 110967 (D. Ariz. Jan. 4, 2019)............................................................... 9, 11

*Brittain v. Twitter, Inc.*,
    2019 WL 8137718 (N.D. Cal. Mar. 15, 2019)......................................................... 6, 15

*Carmouche v. Tamborlee Management, Inc.*,
    789 F.3d 1201 (11th Cir. 2015)............................................................................. 12

*Dealtime.com v. McNulty*,
    123 F. Supp. 2d 750 (S.D.N.Y. 2000)..................................................................... 14

*Dolin v. Facebook, Inc.*,
    289 F. Supp. 3d 1153 (D. Haw. 2018)..................................................................... 12

*Doshier v. Twitter, Inc.*,
    417 F. Supp. 3d 1171 (E.D. Ark. 2019).................................................................. 6, 15

*Emerald Grande, Inc. v. Junkin*,
    334 F. App'x 973 (11th Cir. 2009)........................................................................... 9

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)..................................................................... 11

*Global Satellite Communication Co. v. Starmill U.K. Ltd.*,
    378 F.3d 1269 (11th Cir. 2004)............................................................................... 9

*Gordon v. Sandals Resorts International, Ltd.,*
    418 F. Supp. 3d (S.D. Fla. 2019)............................................................................ 12, 14

*In re Apple Inc.,*
    979 F.3d 1332 (Fed. Cir. 2020).................................................................................... 7

*In re Horseshoe Entertainment,*
    337 F.3d 429 (5th Cir. 2003)........................................................................................ 7

*Kolodziej v. Mason,*
    774 F.3d 736 (11th Cir. 2014)................................................................................... 7, 8

*Krenkel v. Kerzner International Hotels Ltd.,*
    579 F.3d 1279 (11th Cir. 2009).................................................................................... 8

*Loomer v. Facebook, Inc.,*
    2020 WL 2926357 (S.D. Fla. Apr. 13, 2020)............................................................. 8

*L & H Construction Co. v. Circle Redmont, Inc.,*
    55 So.3d 630 (Fla. Dist. Ct. App.2011)...................................................................... 9

*Manrique v. Fabbri,*
    493 So. 2d 437 (Fla. 1986)......................................................................................... 14

*McDonnell Douglas Corp. v. Polin,*
    429 F.2d 30 (3d Cir. 1970).......................................................................................... 7

*Mirasco, Inc. v. Ghaly,*
    2017 WL 4890540 (N.D. Ga. May 30, 2017)........................................................... 14

*NetChoice, LLC v. Moody,*
    2021 WL 2690876 (N.D. Fla. June 30, 2021), *appeal docketed*, No. 21-12355
    (July 31, 2021)............................................................................................................. 4

*Rockridge Trust v. Wells Fargo, N.A.,*
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) ..................................................................... 8

*Rucker v. Oasis Legal Finance, L.L.C.,*
    632 F.3d 1231 (11th Cir. 2011)................................................................................... 5

*SAI Ins. Agency, Inc. v. Applied Systems, Inc.,*
    858 So. 2d 401 (Fla. Dist. Ct. App. 2003)................................................................ 14

*Snapper, Inc. v. Redan,*
    171 F.3d 1249 (11th Cir. 1999)................................................................................... 9

*Stokes v. Markel American Insurance Company,*
    2019 WL 8017457 (S.D. Fla. June 28, 2019)........................................................... 14

*Trans Am Worldwide, LLC v. JP Superior Solutions, LLC*,
    2018 WL 3090394 (N.D. Fla. Apr. 30, 2018) .............................................................. 14

*Twitter, Inc. v. Skootle Corp.*,
    2012 WL 2375486 (N.D. Cal. June 22, 2012) ............................................................. 9

*VS Technologies, LLC v. Twitter, Inc.*,
    2011 WL 11074291 (E.D. Va. June 28, 2011) ............................................................ 9

*Wingo v. Twitter, Inc.*,
    2014 WL 7013826 (W.D. Tenn. Dec. 12, 2014) .................................................. 6, 15

*World Vacation Travel, S.A., de C.V. v. Brooker*,
    799 So. 2d 410 (Fla. Dist. Ct. App. 2001) ................................................................ 14

*Wynn v. Kisinger, Campo & Associates, Corp.*,
    2005 WL 8154579 (S.D. Fla. Nov. 3, 2005) ............................................................. 10

*Zampa v. JUUL Labs, Inc.*,
    2019 WL 1777730 (S.D. Fla. Apr. 23, 2019) ........................................................ 7, 14

## DOCKET

Supplemental Brief, *Trump v. Knight First Amendment Institute at Columbia University*,
    141 S. Ct. 1220 (2021) (No. 20-197), 2020 WL 4905204 ............................................... 8

## STATUTES, RULES, REGULATIONS

28 U.S.C. § 1391 .................................................................................................................. 13

28 U.S.C. § 1404(a) ....................................................................................................... passim

Fla. Stat. § 48.031 ................................................................................................................. 5

Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 .............................. 4, 14

Fed. R. Civ. P. 4(e) ................................................................................................................ 5

## OTHER AUTHORITIES

SB 7072, 2021 Leg. (Fla. 2021) ............................................................................................. 4

## INTRODUCTION

The claims asserted in this action are meritless and should be dismissed with prejudice as a matter of law. But before those fatal flaws can be addressed, the Court should correct another fundamental problem with this lawsuit: It is filed in the wrong court. The forum selection clause in Twitter's User Agreement requires claims like those asserted here to be litigated in the state or federal courts in San Francisco, California. Plaintiffs acknowledge that they agreed to Twitter's User Agreement as a condition of using the platform. And the Supreme Court has made clear that a "valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62-64 (2013) (alteration omitted). Following that instruction, courts routinely enforce forum selection clauses just like the one that Plaintiffs agreed to here. This case is no different. The Court should therefore transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

### A.  Twitter's User Agreement

Twitter operates an Internet communications platform that allows hundreds of millions of people around the world to share views and follow current events. Am. Compl. ¶ 2. Twitter's users communicate their views through posts—called "Tweets"—on Twitter's platform. Twitter is headquartered in San Francisco, California. *Id.* ¶ 25.

Plaintiffs are former or current Twitter account holders. Am. Compl. ¶¶ 43, 119, 126, 131, 139, 148, 157. To create a Twitter account, each Plaintiff was required to complete an online sign-up process during which they agreed to Twitter's User Agreement, including the Terms of Service. *See id.* ¶ 76. Each was also required to acknowledge that, by continuing to use Twitter's services, they agreed to be bound by the current version of the Terms of Service. *See id.* ¶¶ 37, 76; *see also*

Carome Decl. Ex A at 9 (hereinafter "Terms of Service") ("We may revise these Terms from time to time. . . . By continuing to access or use the Service after those revisions become effective, you agree to be bound by the revised Terms.").  Twitter's current and former Terms of Service have been available at all times on its website.

The Twitter User Agreement requires that disputes relating to the use of Twitter's services must be resolved in federal or state court in San Francisco, California.  In particular, the User Agreement states that "[a]ll disputes related to these Terms or Services will be brought solely in the federal or state courts located in San Francisco County, California, United States," and that the parties "consent to personal jurisdiction and waive any objection as to inconvenient forum."  Terms of Service at 9.

By assenting to the User Agreement, Plaintiffs also agreed to abide by Twitter's Rules and Policies.  *See* Terms of Service at 1 ("[T]he Twitter User Agreement comprises these Terms of Service, our Privacy Policy, the Twitter Rules and Policies, and all incorporated policies").  Twitter institutes and enforces the Twitter Rules "to ensure all people can participate in the public conversation freely and safely."  Declaration of Patrick J. Carome ("Carome Decl."), Ex. B (hereinafter "Twitter Rules").  The Rules establish standards regarding what content users may post on the platform, including prohibitions on violence, hateful conduct, and abuse, among others.  Am. Compl. ¶ 38.  For example, the Rules prohibit posting violent threats or content that glorifies violence.  Specifically, they state,

> Glorification of violence policy:  You may not threaten violence against an individual or a group of people.  We also prohibit the glorification of violence. . . . [W]e have a policy against content that glorifies acts of violence in a way that may inspire others to replicate those violent acts and cause real offline harm, or events where members of a protected group were the primary targets or victims. . . . Under this policy, you can't glorify, celebrate, praise or condone violent crimes, violent events where people were targeted because of their membership in a protected group, or the perpetrators of such acts.

Carome Decl. Ex. C, at 2.  The Twitter Rules also prohibit using the Twitter platform to spread

misinformation regarding certain topics, including civic processes and COVID-19.  With respect

to COVID-19, the Twitter Rules state,

> You may not use Twitter's services to share false or misleading information
> about COVID-19 which may lead to harm. . . . Content that is demonstrably
> false or misleading and may lead to significant risk of harm (such as increased
> exposure to the virus, or adverse effects on public health systems) may not be
> shared on Twitter. This includes sharing content that may mislead people about
> the nature of the COVID-19 virus; the efficacy and/or safety of preventative
> measures, treatments, or other precautions to mitigate or treat the disease;
> official regulations, restrictions, or exemptions pertaining to health advisories;
> or the prevalence of the virus or risk of infection or death associated with
> COVID-19. In addition, we may label Tweets which share misleading
> information about COVID-19 to reduce their spread and provide additional
> context.

Carome Decl. Ex D, at 2.

Twitter may enforce these policies by blocking or removing specific posts Tweets that it

determines to be in violation of the Rules, by temporarily or permanently suspending an account,

or by a combination of these steps.  Carome Decl. Ex. E, at 3-4.

**B.      This Litigation**

On July 7, 2021, Donald Trump, Linda Cuadros, and the American Conservative Union

commenced this putative class action against Twitter and its Chief Executive Officer Jack Dorsey.[1]

Dkt. 1.  Despite the User Agreement's express forum selection clause, they filed this action in this

Court, rather than in a state or federal court located in San Francisco County, California.

On July 27, 2021, without having served Twitter with their initial pleading, Plaintiffs filed

an Amended Complaint, adding plaintiffs and claims.   The Amended Complaint alleges  that

---

[1] This motion is brought by Twitter, Inc. alone, and not by Mr. Dorsey.  Twitter notes that this
Court likely does not have personal jurisdiction over Mr. Dorsey, nor would this Court likely be
the proper venue for any claims against him.  Neither of those problems exists in the Northern
District of California.

Twitter's moderation and/or suspension of Plaintiffs' accounts for violations of Twitter's Rules on violence and COVID-19 misinformation violated their First Amendment rights. Am. Compl. ¶¶ 113-167. It also alleges that certain government actors coerced Twitter into moderating Plaintiffs' accounts by making it "increasingly clear that they wanted President Trump, and the views he espoused to be banned," "threatening new regulations" against social media platforms like Twitter and expressing concerns about the spread of COVID-19 misinformation online. *Id.* ¶¶ 51-64, 108. Plaintiffs also allege that Twitter "act[ed] in concert" with the government to "censor[] the specific speech at issue in this lawsuit and in de-platforming the Plaintiff" and to remove COVID-19 information with which the government disagreed. *Id.* ¶¶ 78-112, 173. On these bases, Plaintiffs contend that Twitter's enforcement of its Rules in a manner that affected Plaintiffs' accounts and content was—even though Twitter is privately owned—governmental action for which Twitter may be sued under the First Amendment.

The Amended Complaint also includes a claim under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count III), and a claim under Florida S.B. 7072, 2021 Leg. (Fla. 2021) ("SB 7072") (Count IV), a law enacted in May 2021 that seeks to regulate how online service providers moderate content posted by third parties. *See* Am. Compl. ¶¶ 267-301.[2] In Count III, Plaintiffs allege that Twitter deceived consumers by publicly representing that Twitter applies "objective, uniform standards by which content may be censored," while allegedly engaging in a "subjective pattern of discriminating against disfavored parties" in practice. *Id.* ¶¶ 203-204. For example, the Amended Complaint alleges that because consumers supposedly rely on Twitter's

---

[2] A court in the Northern District of Florida has preliminarily enjoined government officials from enforcing major parts of SB7072 on the ground that they are preempted by federal law and violate the First Amendment. *See NetChoice, LLC v. Moody*, 2021 WL 2690876 (N.D. Fla. June 30, 2021) (Hinkle, J.), *appeal docketed*, No. 21-12355 (11th Cir. July 31, 2021).

"good faith application of their standards," a reasonable consumer would assume that Twitter moderated Plaintiffs' posts claiming "that COVID-19 . . . originated from a laboratory" because they were false, when Twitter instead allegedly "suppressed" those statements because they conflict with the views of certain government actors. *Id.* ¶¶ 200-220. In Count IV, Plaintiffs allege that Twitter engaged in an "inconsistent application of [its] standards" by removing Plaintiffs' Tweets but not consistently removing other Tweets that violate the Twitter Rules. *Id.* ¶¶ 221-233.

On August 31, 2021, nearly two months after filing their original complaint and over a month after filing their amended complaint, Plaintiffs contacted Twitter for the first time relating to this lawsuit, delivering a copy of a summons, the original complaint, and an amended complaint to Twitter's registered agent in Florida.   Plaintiffs also delivered to Twitter's registered agent in Florida a copy of a summons purportedly addressed to Mr. Dorsey, care of Twitter's registered agent, which is clearly not effective service on Mr. Dorsey. *See* Fed. R. Civ. P. 4(e); Fla. Stat. § 48.031.

## LEGAL STANDARD

A forum selection clause is properly enforced by a motion to transfer under 28 U.S.C. § 1404(a). *See Atl. Marine Const.*, 571 U.S. at 52.   Although a court ordinarily evaluates a § 1404(a) motion by considering factors like the convenience of the parties and interests of justice, *see id.* at 62, "the calculus changes . . . when the parties' contract contains a valid forum selection clause," *id.* at 63.   Such a clause "represents the parties' agreement as to the most proper forum," and "enforcement of valid forum selection clauses . . . protects their legitimate expectations and furthers vital interests of the justice system."   *Id.* (internal quotation marks omitted); *see also Rucker v. Oasis Legal Finance, L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (forum selection clauses are "presumptively valid").   Thus, a plaintiff's contrary choice of forum "merits no weight"

in the face of a forum selection clause and a district court is prohibited from "consider[ing] arguments about the parties' private interests." *Atl. Marine Const.*, 571 U.S. at 63. A forum selection clause should "be given controlling weight in all but the most exceptional circumstances," and the plaintiffs seeking to evade the forum selection clause bear the heavy burden of demonstrating that public-interest factors "overwhelmingly disfavor a transfer." *Id.* at 60-63.

## ARGUMENT

This case should be promptly transferred to the Northern District of California. *First*, a motion to transfer should be resolved at the outset of litigation. *Second*, Plaintiffs are subject to a valid, binding contract with Twitter that requires their claims to be litigated in that district because (A) Plaintiffs admit that they agreed to the Twitter User Agreement when they signed up for and continued to use Twitter's services; (B) Twitter's User Agreement contains a mandatory forum selection clause that requires covered disputes to be litigated in a federal or state court located in San Francisco County, California; and (C) the claims in this case fall within the broad scope of this forum selection clause. *Third*, under the governing principles articulated by the Supreme Court in *Atlantic Marine*, which dictate that forum selection clauses are to be honored in all but the most extraordinary circumstances, the forum selection clause here must be enforced. Plaintiffs cannot show that this is the extraordinary case in which a forum selection clause can be overcome. Courts routinely enforce Twitter's forum selection clause, and this case should be no different. *See, e.g.*, *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019); *Brittain v. Twitter, Inc.*, 2019 WL 8137718, at *4 (N.D. Cal. Mar. 15, 2019); *Wingo v. Twitter, Inc.*, 2014 WL 7013826, at *1 (W.D. Tenn. Dec. 12, 2014).

I.   **The Court Should Transfer This Case Before Taking Any Other Action On Plaintiffs' Complaint**

Courts should decide transfer motions before adjudicating any other aspects of the case. "[O]nce a party files a transfer motion, disposing of that motion should unquestionably take top priority." *In re Apple, Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020). Indeed, "a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case." *Accord In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970); *Zampa v. JUUL Labs, Inc.*, 2019 WL 1777730, at *3 (S.D. Fla. Apr. 23, 2019) (observing that motions to transfer are often decided at the outset even before a motion to remand); *Brengle v. ITF Ltd.*, 2018 WL 5279359, at *3 (M.D Fla. Oct. 24, 2018) (courts may consider motions based on forum selection clause "before addressing [other] issues . . . when warranted for purposes of convenience, fairness or judicial economy").

II.  **Plaintiffs' Claims Are Governed By A Valid Forum Selection Clause**

"When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *See Atl. Marine Const.*, 571 U.S. at 52. That standard applies to the § 1404 analysis in this case because Twitter's User Agreement is a valid, binding contract, and its forum selection clause's mandatory terms apply to this dispute.

A.   **Plaintiffs Entered Into A Valid Contract With Twitter**

Plaintiffs acknowledge that by using the Twitter platform, they agreed to be bound by the User Agreement. This creates a binding contract. Under Florida law, "[a] valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Kolodziej v. Mason*, 774

F.3d 736, 741 (11th Cir. 2014).[3]  Courts uphold the terms of a forum selection clause where "the clause was reasonably communicated to the consumer," meaning it was not "hidden or ambiguous," and the parties had an opportunity to reject the terms.  *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (per curiam).  And even if contract terms are "presented on a take-it-or-leave-it basis," that does not preclude them from being valid if a consumer agreed to them and was "under no obligation to do so."  *See Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020).

Here, Plaintiffs have repeatedly conceded that they knew about and agreed to be bound by the User Agreement.  *See* Am. Compl. ¶¶ 76, 202-204, 224-225.  Plaintiffs acknowledge in the Amended Complaint that "[u]se of [the] [Twitter] platform was expressly conditioned on agreeing" to the User Agreement, Am. Compl. ¶ 76, and that Twitter "reserves the right to change" the User Agreement and Terms, *id.* ¶ 37; *See also* Terms of Service at 9 ("By continuing to access or use the Service … you agree to be bound by the revised Terms.").  Mr. Trump has likewise acknowledged that he is bound by Twitter's User Agreement and Terms in other settings.  For example, in a filing in another lawsuit, he stated: "Because the @realDonaldTrump account belongs to Mr. Trump personally, he will continue to have control over that account after his term of office has ended, ***subject to Twitter's terms of service***."  Supplemental Brief at 3, *Trump v.*

---

[3] Twitter believes California law governs the question of contract formation in this case, including because the Twitter User Agreement states that the "laws of the State of California . . . will govern these Terms and any dispute that arises between you and Twitter."  Terms of Service at 9. Although the Supreme Court has held that where a valid forum selection clause exists, the pre-selected forum's choice-of-law rules apply, *see Atl. Marine Const.*, 571 U.S. at 65, for purposes of the contract-formation standard, Florida and California laws do not materially differ, *compare, e.g.*, *Kolodziej v. Mason*, 774 F.3d 736, 740-741 (11th Cir. 2014), *with Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013), and therefore this brief analyzes the contract-formation question under Florida law.

*Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220 (No. 20-197), 2021 WL 276510, at *3 (emphasis added).  Plaintiffs' continued use of the platform with that knowledge plainly manifests assent under Florida law.  *See L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So.3d 630, 634 (Fla. Dist. Ct. App. 2011).  Indeed, courts routinely treat Twitter's User Agreement as a binding contract in enforcing its forum selection clause.  *See supra*, at p. 6.  Accordingly, the User Agreement, including the forum selection clause, is binding on Plaintiffs.

## B.    The User Agreement Contains A Mandatory Forum Selection Clause

Twitter's forum selection clause "'dictates an exclusive forum for litigation under the contract.'"  *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)).  The forum selection clause provides that "[a]ll disputes related to these Terms or the Services will be brought solely in the federal or state courts located in San Francisco County, California, United States."  Terms of Service at 9.  The instruction that "*all* disputes" "*will* be brought" in California courts cannot be read as permissive, thus Twitter's forum selection clause is mandatory and must be enforced.  *See Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (clause declaring that Okaloosa Courts "*will* be the venue for any dispute" was mandatory (emphasis added)).  Indeed, other courts to consider the question have found Twitter's forum selection clause to be mandatory. *E.g.*, *Brittain v. Twitter, Inc.*, 2019 WL 110967, at *2-3 (D. Ariz. Jan. 4, 2019); *Twitter, Inc. v. Skootle Corp.*, 2012 WL 2375486 (N.D. Cal. June 22, 2012); *VS Techs., LLC v. Twitter, Inc.*, 2011 WL 11074291, at *2 (E.D. Va. June 28, 2011).

## C.    The Claims Here Are Within The Forum Selection Clause's Broad Scope

The forum selection clause in Twitter's User Agreement requires "all disputes related to

[Twitter's] Terms or the Services" to be litigated in California.  *See* Terms of Service at 9.[4]  This clause encompasses Plaintiffs' claims, all of which relate to Plaintiffs' use of the Twitter platform (the "Services") and to Twitter's enforcement of its "Terms," including those Terms' requirement that users agree to "compl[y] with" Twitter's "rules" and their reservation of Twitter's "right to remove Content that violates the User Agreement."  Plaintiffs' claims are encompassed by this broad language for at least two reasons.

*First*, Plaintiffs' claims challenge their loss of access to and use of their Twitter accounts and thus "relate[] to" Twitter's "Services."  The Terms define "Services" to encompass, among other things, "our various websites, . . . applications, . . . and other covered services."  Terms of Service at 5.[5]  Plaintiffs' central grievance is that Twitter took enforcement action against their accounts in a manner that limited or removed entirely their ability to use those services to post content, and Plaintiffs seek relief from those restrictions.  For example, Mr. Trump complains that Twitter "permanently banned [him] from his Twitter account, blocking his ability to communicate with his approximately 89 million followers."  Am. Compl. ¶¶ 113-116.  Similarly, the remaining Plaintiffs allege that Twitter temporarily locked and eventually suspended their accounts, Am. Compl. ¶¶ 121-124, 135-137, 142-146, 159, or "purged" their followers, Am. Compl. ¶¶ 128-129.  These allegations relate to Plaintiffs' ability to use and access the Twitter platform, whether through Twitter's "website" or its "application"—and thus relate to Twitter's core Services.  Terms

---

[4] When deciding a § 1404(a) transfer motion, the court may consider undisputed facts outside of the pleadings.  *See, e.g.*, *Wynn v. Kisinger, Campo & Assocs., Corp.*, 2005 WL 8154579, at *2 (S.D. Fla. Nov. 3, 2005) (considering affidavit filed in support of a § 1404(a) transfer motion); *Birdwell v. Royal Caribbean Cruise, A/S*, 1985 WL 66, at *1 (S.D. Fla. Sept. 25, 1985) (same).

[5] The Amended Complaint alleges that each Plaintiff maintained a Twitter account, which, as explained above, constitutes the use of Twitter's "Services."  *See* Am. Compl. ¶¶ 113-117 (Mr. Trump); *id*. ¶¶ 118-124 (Ms. Cuadros); *id*. ¶¶ 125-129 (American Conservative Union); *id.* ¶¶ 130-137 (Mr. Barboza); *id*. ¶¶ 138-146 (Mr. Latella); *id*. ¶¶ 147-155 (Mr. Root); *id*. ¶¶ 156-167 (Dr. Wolf).

of Service at 5.  That Plaintiffs allege Twitter coordinated with or otherwise responded to certain government officials in making its decision to remove their accounts from its platform does not change that the subject of their claims relates to the platform—and, therefore, to Twitter's "Services."

*Second*, the forum selection clause also applies to Plaintiffs' claims because they "relate[] to" the User Agreement's "Terms."  The Terms state that Twitter may "suspend or terminate your account or cease providing you with all or part of the Services at any time . . . if we reasonably believe . . . you have violated . . . the Twitter Rules."  The Amended Complaint challenges how Twitter applied those Rules to the Plaintiffs.  Specifically, Plaintiffs allege that Twitter has "repeatedly failed to act in good faith in accordance with their stated policies" and that Twitter has allegedly "engaged in a subjective pattern of discriminating against disfavored parties" despite having "policies ostensibly proclaim objective, uniform standards."  Am. Compl. ¶¶ 203-204; *see also id.* ¶¶ 218-220, 233 (additional alleged grievances with Twitter's application of its "policies" and "standards").  By challenging how Twitter has applied "policies" that are incorporated into the Twitter Terms, *see id.* ¶ 37, Plaintiffs' claims also "relate[] to [the Twitter] Terms."

Courts have routinely held that disputes concerning a plaintiff's use of social media platforms are covered by forum selection clauses that cover claims "relating to" a user agreement or use of the services more broadly, even those purporting to allege constitutional violations.  *See, e.g.*, *Brittain*, 2019 WL 110967, at *2 (enforcing Twitter's forum selection clause against First Amendment and promissory estoppel claims because they had "some logical or causal connection" to Twitter's Terms); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 834, 841 (S.D.N.Y. 2012) (holding that Facebook's forum selection clause—which covered "any claim, cause of action or dispute . . . arising out of or relating to this Statement [of terms of use] or Facebook"—

applied to claim of discriminatory removal from the platform); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1161 (D. Haw. 2018) (holding that forum selection clause stating that plaintiff "will resolve any claim, cause of action or dispute (claim) . . . with [Facebook] *arising out of or relating to this [SRR] or Facebook* exclusively in the U.S. District Court for the Northern District of California" applied to fraud and tortious interference claims). The result should be no different here.

### III.   The § 1404 Analysis Requires Transfer

Because the claims here are governed by a valid forum selection clause, "the modified analysis in *Atlantic Marine* applies." *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1141, 1142 (S.D. Fla. 2019) (Scola, J.). "The overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice.'" *Atl. Marine Const.*, 571 U.S. at 63. The Supreme Court has made clear that promoting the parties' agreement of where to litigate their disputes is essential to furthering that aim. *Id.* In conducting the § 1404 analysis, district courts therefore give "a valid forum selection clause . . . controlling weight in all but the most exceptional cases." *Id.* This is not an exceptional case, and there is no basis for overcoming the ordinary rule here.

### A.   The Northern District Of California Is An Adequate Alternative Forum

The first step of the § 1404 inquiry "requires the Court to determine whether an adequate alternative forum exists." *Gordon*, 418 F. Supp. 3d at 1142. Here, one plainly does. The Northern District of California has personal jurisdiction over Twitter, which is headquartered in San Francisco, and Mr. Dorsey, its Chief Executive Officer, Am. Compl. ¶¶ 25-26. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) ("A corporation's . . . principal place of business [is a] paradigm all-purpose forum[]." (internal quotation marks omitted)). Plaintiffs agreed to litigate in the Northern District of California, and venue is proper there, where Twitter

maintains its principal place of business. *See* Am. Compl. ¶ 25 (acknowledging Twitter's principal place of business in San Francisco, California); 28 U.S.C. § 1391(b) (venue is proper in "a judicial district in which any defendant resides"); *id*. § 1391(c) (entity resides in the judicial district "in which it maintains its principal place of business").

### B.     The Public Interest Factors Do Not Justify Ignoring The Forum Selection Clause

A court conducting a § 1404 analysis where the parties have agreed to an enforceable forum selection clause "should not consider arguments about the parties' private interests" and instead must "deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Const.*, 571 U.S. at 63.  The Court accordingly must "consider arguments about public-interest factors only." *Id.* at 64.

No public interest factor weighs in Plaintiffs' favor.  Permissible "public interest" arguments "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const.*, 571 U.S. at 62 n.6 (internal quotation marks omitted).  There is no basis to believe Florida has a particular interest in this case being litigated in federal court here, particularly as the events at issue took place in California.  And Plaintiffs can identify no administrative difficulties that would result from transfer.

Nor do Plaintiffs have a cognizable interest in having any of the claims in this case decided by a federal district court in Florida versus a federal district court in California.  As a general matter, "Florida courts are directed to give effect to agreements on forum selection in order to 'recognize the legitimate expectations of contracting parties.'" *America Online v. Booker*, 781 So.

2d 423, 425 (Fla. Dist. Ct. App. 2001) (quoting *Manrique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986)).  In this case, Plaintiffs principally allege violations of federal law—indeed; these were the only claims asserted in the original complaint—which "any district court" is competent to decide. *Zampa*, 2019 WL 1777730, at *3; *see also Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 757 (S.D.N.Y. 2000) ("To the extent this action raises questions of federal law, either forum is equally capable of hearing and deciding those questions."); *Beckerman v. Heiman*, 2006 WL 1663034, at *9 (S.D.N.Y. June 16, 2006) ("[P]laintiffs have asserted federal claims, and federal courts are equally capable of adjudicating these.").  And to the extent Plaintiffs have a basis to bring claims under Florida law, there is no reason why a federal court in California would be less competent to decide them than a federal court in Florida.  *See Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019) ("[A] district court in either Florida or Delaware is equally capable of applying the relevant law to the dispute.").[6]  Indeed, courts in Florida routinely enforce forum selection clauses in cases involving FDUTPA claims.  *See Gordon*, 418 F. Supp. 3d at 1141.[7]

Even if a public interest factor were implicated, this would not be among the "rare" circumstances where public interest factors can "defeat a transfer motion."  *Atl. Marine Const.*, 571 U.S. at 64.  Nothing is extraordinary about the claim in this case: users sue Twitter for removing them from its platform frequently throughout the country, and those cases are routinely

---

[6] *See also Trans Am Worldwide, LLC v. JP Superior Solutions, LLC*, 2018 WL 3090394, at *10 (N.D. Fla. Apr. 30, 2018) ("[D]istrict courts often have little trouble applying the law of other states."); *Mirasco, Inc. v. Ghaly*, 2017 WL 4890540, at *4 (N.D. Ga. May 30, 2017) ("[T]o the extent that Georgia substantive law applies, both Georgia and California district courts are capable of applying such law.").

[7] *See also SAI Ins. Agency v. Applied Sys., Inc.*, 858 So. 2d 401, 403-404 (Fla. Dist. Ct. App. 2003) (dismissing for improper venue based on a forum selection clause and declining to impose a rule that "as a matter of Florida public policy . . . a venue clause in a contract may never be enforced in the face of a claim under [F]DUTPA"); *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001).

transferred to the Northern District of California when brought in an improper forum.  *See, e.g.,* *Doshier.*, 417 F. Supp. 3d at 1180; *Brittain*, 2019 WL 8137718, at *1; *Wingo*, 2014 WL 7013826, at *1.  This case should be as well.

## CONCLUSION

For the foregoing reasons, this case should be promptly transferred to the Northern District of California.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), the undersigned hereby certifies that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Respectfully submitted,

Patrick J. Carome (*pro hac vice* pending)
Ari Holtzblatt (*pro hac vice* pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel.: (202) 663-6800
Fax: (202) 663-6363
patrick.carome@wilmerhale.com

Felicia H. Ellsworth (*pro hac vice* pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

*/s/Peter W. Homer*
Peter W. Homer (FL Bar No. 291250)
HOMER BONNER
1200 Four Seasons Tower
1441 Brickell Ave.
Miami, FL 33131
Tel.: (305) 350-5139
Fax: (305) 982-0063
phomer@homerbonner.com

***Attorneys for Defendant Twitter, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Peter W. Homer*
Peter W. Homer
