# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-22445-KMM

DONALD J. TRUMP, *et al*.,

      Plaintiffs,

v.

YOUTUBE, LLC, *et al*.,

      Defendants.

_____/

## <u>ORDER ON MOTION TO TRANSFER</u>

THIS CAUSE came before the Court upon Defendants YouTube, LLC ("YouTube") and Sundar Pichai's (collectively, "Defendants") Motion to Transfer to the Northern District of California. ("Mot.") (ECF No. 64). Therein, Defendants request that the Court transfer the above-captioned case to the Northern District of California, pursuant to a forum-selection clause in YouTube's Terms of Service ("TOS"). *See generally id.* Plaintiffs Donald J. Trump ("Trump"), Kelly Victory ("Victory"), Austen Fletcher ("Fletcher"), American Conservative Union ("ACU"), Andrew Baggiani ("Baggiani"), Maryse Veronica Jean-Louis ("Jean-Louis"), Naomi Wolf ("Wolf"), and Frank Valentine ("Valentine"), individually, and on behalf of those similarly situated (collectively, "Plaintiffs") have filed a response in opposition. ("Resp.") (ECF No. 65). Defendants filed a reply. ("Reply") (ECF No. 68). The Motion is now ripe for review.

## I.    BACKGROUND[1]

This case arises from various actions taken by YouTube with respect to Plaintiffs' use of its platform. *See generally* Am. Compl. Plaintiff Trump's YouTube account was suspended

---

[1] The relevant facts are taken from the Amended Complaint, ("Am. Compl.") (ECF No. 21), and exhibits attached to Plaintiffs' Motion and Defendants' Response.

following a sequence of events that began on January 6, 2021, when YouTube removed a video posted by Plaintiff Trump in which he "allegedly 'repeat[ed] false information about the outcome of the election,'" in a video addressing the Capitol attack. *Id.* ¶¶ 164, 168. On January 13, 2021, YouTube stated that it would prevent Plaintiff Trump's account from uploading new videos for at least seven (7) days. *Id.* ¶ 167. Then, on January 26, 2021, YouTube stated: "[i]n light of concerns about the ongoing potential for violence, the Donald J. Trump channel will remain suspended." *Id.* ¶ 168.[2]

However, the factual allegations in the Amended Complaint are not limited to the circumstances surrounding Plaintiff Trump's YouTube account. The Amended Complaint also alleges facts relating to YouTube's handling of accounts and videos for Plaintiffs Victory, Fletcher, ACU, Wolf, Baggiani, Valentine, and Jean-Louis. *See generally* Am. Compl. Plaintiff Victory has had multiple videos involving her views on how to mitigate the risks of COVID-19, and thereby restart church services and schools, removed for violations of "community standards." *Id.* ¶¶ 207–210. Plaintiff Fletcher maintained a YouTube account on which he discussed various conservative-leaning viewpoints, as well as opinions on COVID-19 and related public health measures such as "lockdowns." *Id.* ¶¶ 212–216. Plaintiffs claim Plaintiff Fletcher's account was "demonetized" and had multiple videos removed by YouTube—which resulted in a loss of more than $50,000 to him personally. *Id.* ¶ 216. Lastly, Plaintiff ACU was sanctioned by YouTube and had video's removed involving "election integrity issues" and treatment of COVID-19 with the drug hydroxychloroquine. *Id.* ¶¶ 224–227. Plaintiff ACU was also temporarily suspended in July of 2021. *Id.* ¶ 230. Plaintiffs Baggiani, Jean-Louis, Wolf, and Valentine allege similar facts

---

[2] Plaintiffs also allege that YouTube interfered with Plaintiff Trump's ability to run political ads on YouTube beginning in December of 2019. Am. Compl. ¶ 162.

involving videos being taken down, accounts being suspended, and/or accounts being demonetized. *Id.* ¶¶ 173–200.

Plaintiffs filed the original Complaint (ECF No. 1) on July 7, 2021 and an Amended Complaint on July 27, 2021. In the Amended Complaint, Plaintiffs bring the following claims: (1) a claim that YouTube has violated the First Amendment to the U.S. Constitution ("Count I"), *see* Am. Compl. ¶¶ 235–254; (2) a claim seeking a declaratory judgment of unconstitutionality as to Section 230 of the Communications Decency Act, 47 U.S.C. § 230, and related injunctive relief ("Count II"), *see id.* ¶¶ 254–266; (3) a claim seeking injunctive relief under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.203(8), ("Count III"), *see id.* ¶¶ 267–282; and (4) a claim seeking damages under FDUTPA, Florida Statutes § 501.2041, ("Count IV"), *see id.* ¶¶ 283–301.

On August 23, 2021, Plaintiffs filed a Motion for Preliminary Injunction seeking, *inter alia*, an Order reinstating Plaintiff Trump's access to his YouTube channel and a declaration that Section 230(c) of the Communications Decency Act is unconstitutional as applied to the facts of this case. (ECF No. 43) at 29–30. The Court later stayed briefing on Plaintiffs' Motion for Preliminary Injunction, pending the outcome of venue-related concerns raised by Defendants.

On September 17, 2021, Defendants filed the instant Motion to Transfer to the Northern District of California, premised upon the forum-selection clause included in YouTube's TOS. *See generally* Mot.

## II.    LEGAL STANDARD

28 U.S.C. § 1404 provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

§ 1404(a). "[A] forum-selection clause may be enforced by a motion to transfer under § 1404(a)[.]" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). "When a defendant files such a motion[], a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id*. "[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. at 59–60 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)); *see also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) ("[A]n enforceable forum-selection clause carries near-determinative weight.").

Where the parties have agreed to a forum-selection clause, a court evaluating a motion to transfer should "afford no weight to either the plaintiff's selected forum or the parties' private interests, and [should] ignore the choice-of-law rules of the original venue." *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 62–65). In such circumstances, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 64.

Typically, a plaintiff may seek to overcome this burden by showing that the public interest favors the preselected forum. *Id*. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 & n.6 (1981)).

## III.    DISCUSSION

### A.    YouTube's Forum-Selection Clause.

Attached to Defendants' Motion is the Declaration of Alexandra N. Veitch ("Ms. Veitch"), who is a Director on YouTube's Government Affairs and Public Policy Team.  ("Veitch Decl.") (ECF No. 64-1) ¶ 1.  Therein, Ms. Veitch states that in order for users to create a YouTube channel, they are required to accept the TOS.  *Id*. ¶ 10.  Additionally, each time a user uploads a video, that user is required to "click a button reaffirming their acceptance of and agreement to be bound by the TOS before the video would be posted to YouTube." *Id*. ¶ 11.  Based on a review of YouTube's records, Ms. Veitch states all Plaintiffs have "affirmatively clicked a button indicating their acceptance of and agreement to be bound by the TOS . . ., whether in the process of creating their YouTube channels, uploading videos to those channels, or both." *Id*. ¶ 12.

A copy of YouTube's TOS is attached to Ms. Veitch's Declaration as Exhibit A thereto. ("TOS") (ECF No. 64-2).  The TOS includes a forum-selection clause in a paragraph entitled "Governing Law," which states:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

*Id*. at 7.  Ms. Veitch states that the forum-selection clause was present in the TOS when each Plaintiff indicated their acceptance of and agreement to be bound by the TOS.  Veitch Decl. ¶ 12. Plaintiffs have not disputed that they agreed to the TOS in the manner described by Ms. Veitch. *See generally* Resp.  Thus, the Court finds that the Plaintiffs have all agreed to the TOS.

**B.     This Case Must Be Transferred to the Northern District of California Pursuant to the Forum-Selection Clause in YouTube's TOS.**

Defendants argue that the Parties agreed to a binding forum-selection clause, which requires this case to be transferred to, and litigated in, the Northern District of California.  Mot. at 8.  Defendants contend that no extraordinary circumstances preclude a transfer of this case to the Parties' designated federal forum.  *Id*. at 9–10.  Defendants also argue that the forum-selection clause in YouTube's TOS encompasses the claims asserted by Plaintiffs.  *Id*. at 10.  Defendants point to a number of other cases arising from challenges to YouTube's moderation of content on its platform that have been transferred pursuant to the forum-selection clause.  Mot. at 1–2, 12 (citing *Seaman v. YouTube, LLC*, No. 3:18-cv-833-HEH, Dkt. 20 at 1 (E.D. Va. Apr. 5, 2019); *Kifle v. YouTube LLC*, No. 1:21-cv-00238-JPB, Dkt. 24 (N.D. Ga. Mar. 12, 2021); *Lewis v. Google, Inc*., 2019 WL 10749715, at *3 (D. Colo. Dec. 31, 2019); *Ramani v. YouTube LLC*, 2019 U.S. Dist. LEXIS 162086, at *5 (S.D.N.Y. Sept. 20, 2019); *Muhammad v. YouTube, LLC*, 2019 WL 2338503, at *3 (M.D. La. June 3, 2019); *Song fi, Inc. v. Google Inc*., 72 F. Supp. 3d 53, 64 (D.D.C. 2014)).  Thus, Defendants argue that the forum-selection clause is enforceable in this case. Mot. at 13–14.  Defendants also argue that the forum-selection clause is mandatory, given the wording of the provision which states that covered claims "will be litigated exclusively in the federal or state courts of Santa Clara County, California."  *Id*. at 14 (citing *Bowen*, 2008 WL 1757578, at *2 (explaining that YouTube's clause is "cast in mandatory terms") (other citations omitted)).  Finally, Defendants submit that there are no public-interest factors which disfavor a transfer to the Northern District of California.  *Id*. at 15–18.

In response, Plaintiffs contest the transfer of this case to the Northern District of California on six grounds.  First, Plaintiffs argue that YouTube's TOS do not apply to governmental entities, including Plaintiff Trump, as former President of the United States.  Resp. at 1.  Second, Plaintiffs

6

assert that the forum-selection clause in YouTube's TOS is not enforceable. *Id.* Third, Plaintiffs contend that under Florida law, the forum-selection clause is ambiguous and should be construed against Defendants. *Id.* Fourth, Plaintiffs argue that their claims do not arise from the specific terms of the clause. *Id.* Fifth, Plaintiffs submit that the public interest weighs in favor of keeping this case in the Southern District of Florida. *Id.* And sixth, Defendants contend that because the forum-selection clause does not apply, this case should remain in the Southern District of Florida under 28 U.S.C. § 1404(a). *Id.*

In reply, Defendants contend that Plaintiffs' argument that YouTube's forum-selection clause cannot apply to Plaintiff Trump because he was formerly the President is unsupported by citations to legal authority. Reply at 1. Relatedly, Defendants point out that Plaintiff Trump: (1) was a private citizen when he created his account, (2) was a private citizen when he brought this suit, and (3) is currently seeking personalized relief (*i.e.,* the restoration of his YouTube account in his personal capacity). *Id.* Defendants also argue that the plain language of the forum-selection clause covers the claims here, as they are "directly and inexorably linked to both YouTube's service and TOS." *Id.* Defendants assert that the claims under FDUTPA, under established law, do not allow Plaintiffs to avoid transfer. *Id.* at 1–2. Lastly, Defendants dispute Plaintiffs' attempt to portray this case as a localized controversy, when it is in fact a case with nationwide implications in many respects—not least of which is because this case has been brought on behalf of a putative nationwide class seeking broad nationwide relief, including the invalidation of a federal statute. *Id.* at 2.

**1. Plaintiff Trump's Former Status as the President of the United States Does Not Preclude the Application of the Forum-Selection Clause in This Case.**

Plaintiffs' argument that the forum-selection clause does not apply to Plaintiff Trump because he is the former President of the United States creates a threshold issue in this case that

the Court must address before deciding whether the forum-selection clause is valid and enforceable.

Plaintiffs argue that Plaintiff Trump's use of social media while he was President had been, in many cases, considered to be statements made in his official capacity. Resp. at 4 (citing *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir. 2017), *cert. granted sub nom.*, *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080 (2017) (treating a tweet by Plaintiff Trump as an official statement). Relatedly, Plaintiffs point out that Plaintiff Trump's tweets were retained by the National Archives and Records Administration as official records under the Presidential Records Act. *Id*. at 3. Plaintiffs also argue that Plaintiff Trump's social media accounts were considered a "public forum" for purposes of applying the First Amendment. Resp. at 8, 10 (citing *Knight First Amdt. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 232 (2d Cir. 2019)). Plaintiffs provide the Court with two agreements that they claim limit the application of forum-selection clauses to the United States, and Plaintiff Trump as the former President. (ECF Nos. 65-1, 65-2). Plaintiffs contend that Plaintiff Trump was using his social media accounts in his official capacity at all times relevant to this suit and, therefore, the forum-selection clause in the TOS is not controlling as to venue in the above-captioned case. *Id*. at 4. Lastly, Plaintiffs argue that Defendants have not shown that the forum-selection clause encompasses the federal government. Resp. at 7.

In reply, Defendants assert that Plaintiffs' arguments amount to "smoke and mirrors." Reply at 4. Defendants note that Plaintiff Trump is not bringing this lawsuit as the President of the United States or as a representative of the federal government. *Id*. To the contrary, Defendants point out that Plaintiff Trump is (1) suing on his own behalf, (2) seeking damages payable to himself, and (3) seeking an injunction restoring his private YouTube account. *See generally* Am. Compl. Additionally, Defendants point out that Plaintiffs' argument premised upon the

non-enforceability of the TOS against governmental entities, such as Plaintiff Trump as the former President, is "conspicuously unsupported by any actual legal authority." Reply. at 1. Defendants also note that the claims asserted in the Amended Complaint are inherently related to Plaintiff Trump in his capacity as a private citizen—for example, FDUTPA is a Florida law that protects consumers, not governmental entities or officials. *Id*. at 3. Defendants also argue the agreements cited to by Plaintiffs for the proposition that the federal government is not bound by forum-selection clauses are irrelevant and do not even mention forum-selection clauses. *Id*. at 4.

To begin, the Court need not reach the issue of whether the United States or its officials can be bound by a forum-selection clause because, in this case, there is no federal agency or entity that is a party to this case. Plaintiffs assert that "[a]t all times relevant to this action, Plaintiff [Trump] was the sitting President of the United States, and used his social media accounts and YouTube's services in that capacity as a public forum." Resp. at 4. Yet, that is plainly not the case because Plaintiff Trump agreed to the TOS in his individual capacity, has brought this suit in his individual capacity, and is seeking the restoration of his YouTube account in his individual capacity. *See generally* Am. Compl. Indeed, as recognized in the Amended Complaint, Plaintiff Trump is bringing this case not as the President of the United States, but as "a private citizen and is domiciled in Palm Beach, Florida." *Id*. ¶ 16. Plaintiff Trump's status in this case as a private citizen is further confirmed by the fact that he is pursuing claims under FDUTPA—which provides no cause of action for the federal government or its officials. *Id*. ¶¶ 267–301. Thus, because Plaintiff Trump is not a party to this case in an official government capacity, the Court finds these arguments to be without merit.

Relatedly, the Court finds Plaintiffs' arguments premised on the Second Circuit's opinion in *Knight* to be unrelated to the enforceability of the forum-selection clause in this case. In *Knight*,

the Second Circuit held that Plaintiff Trump's Twitter account was a "public forum" such that Plaintiff Trump violated the First Amendment by blocking users from interacting with his account. 928 F.3d at 237–38. But this holding has no impact on the enforceability of the forum-selection clause in this case, where Plaintiff Trump is a party in his individual capacity.

Further, in any event, the Court finds that Plaintiffs' arguments are not sufficiently supported by citations to legal authority. For example, Plaintiffs state that "[t]he federal government recognizes that federal entities using social media platforms do not have the authority to bind themselves to the standard choice of forum, choice of law, or choice of venue terms that the major social media platforms have in their terms of service." Resp. at 6. However, this proposition is not supported by any citation to legal authority. *Id*. The only support for this proposition appears to come from two documents attached to Plaintiffs' Response. First, Plaintiffs point to an agreement between the National Archives and Records Administration and YouTube—which is attached as Exhibit 1 to Plaintiffs' Response. ("NARA Agreement") (ECF No. 65-1). Second, as Exhibit 2 to Plaintiff's Response, Plaintiffs have provided the Court with a webpage entitled "Federal-Compatible Terms of Service Agreements – A guide to the agreements negotiated between the federal government and vendors who offer digital tools and services." ("Digital.gov Webpage") (ECF No. 65-2).

Setting aside that Plaintiffs' second submission is not even a contract, but a webpage, Plaintiff Trump is not a party that is provided for in either document. Plaintiffs' argument relies heavily on the first document's statement "that any disputes under these agreements will be governed by and interpreted and enforced in accordance with the laws of the United States of

America without reference to conflict of laws." Resp. at 2 (citing NARA Agreement at 4).[3] However, it is not clear that this language would negate the application of a forum-selection clause to the federal government—let alone in the unusual circumstance of a former federal official who used private social media accounts for public purposes. Simply put, Plaintiffs have not cited to, nor is the Court aware of, any legal authority standing for the proposition that a former federal official is exempt from a forum-selection clause to which he agreed to in his individual capacity. Plaintiffs' argument to that effect is, therefore, without merit.[4]

### 2. YouTube's Forum-Selection Clause Is Mandatory and Enforceable.

Defendants argue that YouTube's forum-selection clause is mandatory and enforceable in this case, because "[c]ourts have consistently held forum-selection clauses in standard-form online agreements—like the YouTube TOS that Plaintiffs expressly accepted (Decl. ¶ 12)—to be 'valid and enforceable.'" Mot. at 12–14 (citing *Segal v. Amazon.com, Inc*., 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011); (other citations omitted)). In particular, Defendants point to an unbroken line of cases in which federal courts have enforced YouTube's forum-selection clause. *Id*. at 13–14 (citing *Seaman*, No. 3:18-cv-833-HEH, Dkt. 20 at 1; *Kifle*, No. 1:21-cv-00238-JPB, Dkt. 24; *Lewis*, 2019 WL 10749715, at *3; *Ramani*, 2019 U.S. Dist. LEXIS 162086, at *5; *Muhammad*, 2019 WL 2338503, at *3; *Song fi*, 72 F. Supp. 3d at 64). Lastly, Defendants contend that the forum-selection clause is, by its terms, mandatory. *Id*. at 14 (citing *Bowen*, 2008 WL 1757578, at *2 (explaining that YouTube's clause is "cast in mandatory terms")).

---

[3] Plaintiffs also point to language purportedly included in the Digital.gov Webpage stating that disputes "will be governed by . . . the law of the United States of America without reference to conflict of laws." Resp. at 2 (citing Digital.gov Webpage).

[4] The Court need not—and does not—reach the issue of whether a forum-selection clause would apply to the federal government under circumstances where a federal official is actually a party to a case, in his or her own official capacity.

Plaintiffs contend that the forum-selection clause is ambiguously drafted, and that any ambiguity should be construed against the drafter. Resp. at 7 (citing *Travelcross, S.A. v. Learjet, Inc.*, No. 10-61842-CIV, 2011 WL 13214118, at *1 (S.D. Fla. Mar. 28, 2011)). Plaintiffs contend that the forum-selection clause in YouTube's TOS is permissive, not mandatory, and thus does not dictate the forum for this litigation. *Id.* at 7–8. Specifically, Plaintiffs argue that:

> By using "consent," Defendants suggest that Users cannot raise an objection to lawsuits filed in California, while leaving the door open to Defendants initiating actions in different courts. This combination of exclusive jurisdiction ("litigated exclusively") with permissive language ("consent to personal jurisdiction") creates an ambiguity in the clause which is fatal to its effectiveness.

*Id.* at 12. Plaintiffs contend that this case is analogous to *Travelcross*, where the court found that a forum-selection clause was ambiguous. *Id.* at 13 (citing *Travelcross*, 2011 WL 13214118 at *1).

In reply, Defendants contend that the forum-selection clause, when read in its entirety, is clearly not permissive. Reply at 6. Defendants also distinguish *Travelcross* because in that case, the court concluded that the clause was ambiguous because it referred to "jurisdiction" but not "venue." *Id.* (citing *Travelcross*, 2011 WL 13214118 at *1, 4).

To begin, the Court finds that the forum-selection clause in this case is mandatory, not permissive, based on a plain reading of the entire clause, which states:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules, and will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA. You and YouTube consent to personal jurisdiction in those courts.

TOS at 7. The Court agrees with Defendants that the terms of the forum-selection clause are mandatory. The first sentence of the clause states, in no uncertain terms, that all claims arising out of or relating to the TOS "will be litigated exclusively" in California courts. Thus, the forum-selection clause, read in its entirety, makes clear that the Parties' consent to personal jurisdiction in California does not render the clause permissive. *Id.*

12

Additionally, Plaintiffs' reliance on *Travelcross* is misplaced because in that case, the forum-selection clause designated Kansas as the "exclusive jurisdiction" for claims—which then-U.S. District Judge Adalberto Jordan explained is a concept that is different from venue. *Travelcross*, 2011 WL 13214118 at *4. In this case, there is no cause for uncertainty because the forum-selection clause states that all claims "will be litigated exclusively" in California courts. TOS at 7. This language plainly encompasses venue for claims arising out of or relating to the TOS and, therefore, the Court finds that the forum-selection clause is unambiguous.

Moreover, Plaintiffs have not raised any argument relating to Defendants' reliance on an unbroken line of cases in which federal courts have reviewed, and enforced, YouTube's forum-selection clause. *See generally* Resp.; *see* Mot. at 13–14 (citing *Seaman*, No. 3:18-cv-833-HEH, Dkt. 20 at 1; *Kifle*, No. 1:21-cv-00238-JPB, Dkt. 24; *Lewis*, 2019 WL 10749715, at *3; *Ramani*, 2019 U.S. Dist. LEXIS 162086, at *5; *Muhammad*, 2019 WL 2338503, at *3; *Song fi*, 72 F. Supp. 3d at 64).

For these reasons, the Court finds the terms of the forum-selection clause to be both mandatory and unambiguous.

### 3. The Forum-Selection Clause Encompasses Plaintiffs' Claims.

Defendants contend that the language of the forum-selection clause encompasses Plaintiffs' claims, because the "phrase 'arising out of' is interpreted broadly and covers 'all causes of action arising directly or indirectly from the business relationship evidenced by the contract.'" Resp. at 10 (quoting *Stewart*, 810 F.2d at 1070). Defendants argue that the claims asserted in the Amended Complaint fall within the clause's scope because the claims "arise from Plaintiffs' status as YouTube users and stem from YouTube's alleged decisions to remove their videos (or other content) from the service or to suspend their channels[.]" *Id.* (citing Am. Compl. ¶¶ 234–301).

13

Defendants also point out that Plaintiffs' repeatedly reference concerns over YouTube's compliance with the TOS throughout the Amended Complaint. *Id.*

In response, Plaintiffs argue that claims asserted in the Amended Complaint do not arise within the scope of the forum-selection clause because Plaintiffs' claims under FDUTPA are not based on their use of YouTube's services, but rather deceptive practices towards Florida consumers. Resp. at 10–13. Plaintiffs note that Florida courts have found FDUTPA claims are independent, and outside the scope of forum-selection clauses. *Id.* at 11 (citing *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627 (Fla. Dist. Ct. App. 1999) ("The unfair trade claim is an independent statutory claim that is severable from all the remaining claims. It does not arise out of the contract, nor does it exist solely for the benefit of the parties to the contract[.]"). Thus, Plaintiffs argue that their FDUTPA claims arise not out of a breach of the agreement, but out of Defendants' ongoing deceptive practices, and therefore the forum-selection clause does not apply. *Id.* at 13. Plaintiffs also argue that FDUTPA claims implicate a public policy that favors of keeping such claims in Florida. *Id.* 14–16.

Defendants argue in their Reply that there is no rule against applying a forum-selection clause to FDUTPA claims. Resp. at 6 (citing *Farmers Grp., Inc. v. Madio & Co.*, 869 So. 2d 581, 582 (Fla. Dist. Ct. App. 2004) ("[T]he mere fact that [a defendant]'s remaining claims allege statutory violations of the FDUTPA does not mean that they are not subject to the [forum-selection] clause."); *Best Beach Getaways LLC v. TSYS Merch. Sols. LLC*, 2020 WL 9264809, at *3 (N.D. Fla. July 2, 2020) (FDUTPA claim governed by venue clause covering claims "relating to" the agreement)). Defendants argue that cases relied on by Plaintiffs for the proposition that FDUTPA claims do not fall within forum-selection clauses are distinguishable from this case. Resp. at 8, n.5. For example, in *Contractor's Mgmt.*, Defendants note that the

14

forum-selection clause explicitly used the words "[a]ny lawsuit, litigation or arbitration *concerning this agreement.*"  Resp. at 8, n.5 (citing *Contractor's Mgmt.*, 799 So. 2d at 321 (emphasis added)).

Defendants also argue that even if the FDUTPA does implicate the public interest, that does not bar the application of the forum-selection clause in this case.  *Id.* at 8–9 (citing *World Vacation Travel, S.A., de C.V. v. Brooker*, 799 So. 2d 410, 411–12 (Fla. Dist. Ct. App. 2001) (enforcing forum-selection clause as to FDUTPA claim "is not violative of Florida public policy"); *Gordon v. Sandals Resorts Int'l*, Ltd., 418 F. Supp. 3d 1132, 1140–41 (S.D. Fla. 2019)).

To begin, the Court finds that the application of the forum-selection clause in this case, which includes FDUTPA claims, does not contravene public policy.  As noted in *Gordon*, Florida's policy as to whether a forum-selection clause should be enforced against a plaintiff asserting a claim under FDUTPA is "muddled."  418 F. Supp. 3d at 1140.  In *Gordon*, U.S. District Judge Robert N. Scola reviewed the state of Florida law on this issue, which bears repeating here at length:

> The Florida courts have conflicting holdings regarding when and if a forum selection clause is enforceable against a FDUTPA claim.  In *Management Computer Controls*, the Florida appellate court held that the venue clause could not be applied to the FDUTPA claim because "[t]he use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute." 743 So. 2d at 632.  Since the unfair trade claim was "severable from all the remaining claims" and "it [did] not arise out of the contract," the court concluded that the FDUTPA claim was beyond the scope of the venue clause.  *Id.* **Subsequent cases have held forum selection clauses to be valid, and they have distinguished *Management Computer Controls* on the basis that, unlike the claims in *Management*, the claims arose from the contract.**  *See World Vacation Travel, S.A. v. Brooker*, 799 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001) (the claims are not severable, the claims arise out of the agreement and "there is no public policy against the contracting parties designating the home state of one of two corporations as the forum for ensuing litigation."); *SAI Ins. Agency, Inc. v. Applied Systems, Inc.*, 858 So. 2d 401, 403 (Fla. Dist. Ct. App. 2003) (distinguishing *Management Computer Controls* and "declin[ing] to construct a rule of public policy that would completely abrogate language selected by the parties to a contract."); *see also, Contractor's Management Systems of NH, Inc. v. Acree Air Conditioning, Inc.*, 799

15

So. 2d 320 (Fla. Dist. Ct. App. 2001) (the claim does not arise out of the agreement, and therefore the forum selection clause does not apply).

In 2004, a Florida appellate court expanded the public policy reasoning from *Management Computer Controls*. *See America Online, Inc. v. Pasieka*, 870 So. 2d 170, 171 (Fla. Dist. Ct. App. 2004). That court ruled that the class action FDUTPA claim was not subject to the forum selection clause, "as that would undermine the effectiveness and purpose of the statute." *Id.* at 171. The court distinguished *Pasieka* from the previous line of cases on the basis that it was a class action. It recognized that "*Management Computer* did not establish an absolute rule against enforcing forum selection clauses in connection with FDUTPA claims." *Id.* Because *Pasieka* involved a class action and the unavailability of the Florida remedy in another state, "the policy concerns recognized in Management Computer . . . militate against enforcement of the clause here." *Id.* But this policy has not been consistently articulated by the Florida courts. Another Florida court upheld the same forum selection clause as the one from *Pasieka* and did not discuss policy concerns specific to class actions. *America Online, Inc. v. Booker*, 781 So. 2d 423, 424 (Fla. Dist. Ct. App. 2001). That court decided that the choice of forum clause is valid and enforceable even though the chosen forum does not have a mechanism for class actions and parties would have to litigate individual cases in Virginia small claims court. *Id.* The court stated that "forum selection clauses enhance contractual and economic predictability, while conserving judicial resources and benefitting commercial entities as well as consumers" and further that "[t]o promote these policy goals, Florida courts are directed to give effect to agreements on forum selection in order 'to recognize the legitimate expectations of contracting parties.'" *Id.* at 424–25 (citing *Marique v. Fabbri*, 493 So. 2d 437, 440 (Fla. 1986)).

418 F. Supp. 3d at 1140–41 (internal citations reformatted) (emphasis added). In *Gordon*, having extensively reviewed the state of Florida law on this issue, the "court decline[d] to find that the enforcement of the forum selection clause would contravene Florida public policy." *Id.* In so doing, Judge Scola noted that "'[p]ublic policy is an amorphous concept' [and] 'it has been held that, the delicate and undefined power of courts to declare a contract void as contravening public policy should be exercised with great caution.'" *Id.* (quoting *Davis v. Oasis Legal Finance Operating Company, LLC*, 936 F.3d 1174, 1178 (11th Cir. 2019)). The Court agrees with, and

finds no reason to depart from, the reasoning in *Gordon* and finds that public policy does not preclude the application of the forum-selection clause to this case.[5]

Next, the Court considers whether the FDUTPA claims in the Amended Complaint arise under the terms of the forum-selection clause in YouTube's TOS. For the reasons discussed below, the Court finds that the forum-selection clause applies to the FDUTPA claims.

Although the law in this area is not entirely settled, many Florida courts hold that FDUTPA claims are governed by forum-selection clauses. *Best Beach*, 2020 WL 9264809, at *3 (citing *Gordon*, 418 F. Supp. 3d at 1140–41 (collecting cases, and noting the divide relates to whether the claims to be severed relate to the underlying contract).[6] The Court agrees with the reasoning of courts which have found that FDUTPA claims may fall within the scope of forum-selection clauses—depending on the language of the forum-selection clause and the facts underlying the FDUTPA claim. *See Fairbanks Contracting & Remodeling, Inc. v. Hopcroft*, 169 So. 3d 282, 283 (Fla. Dist. Ct. App. 2015) (citing *Farmers Grp., Inc. v. Madio & Co.*, 869 So.2d 581, 582 (Fla. Dist. Ct. App. 2004) (holding that a valid forum-selection clause applied to tort and FDUTPA claims where there was a "significant and obvious nexus between the claim and the Agreement")); *Best Beach*, 2020 WL 9264809, at *3 ("The forum selection clause at issue in this case includes claims 'relating to' the Merchant Card Processing Agreement, and Plaintiff's FDUTPA claim

---

[5] "Florida's interest in preventing deceptive and unfair trade practices can be vindicated just as meaningfully by any given federal court—particularly since the State of Florida is not a party to this case." *Best Beach*, 2020 WL 9264809, at *2.

[6] Some Florida courts have found that FDUTPA claims are severable from other claims that are subject to a forum selection clause. *See, e.g.*, *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627 (Fla. Dist. Ct. App. 1999). However, the Court agrees with the reasoning of other courts that have applied forum-selection clauses to FDUTPA claims, based on the language of the forum-selection clause. *Gordon*, 418 F. Supp. 3d at 1141 (citing *Phillips v. NCL Corp. Ltd.*, 2019 WL 2288987 (S.D. Fla. May 29, 2019)).

manifestly relates to Defendant's performance of its obligations under that agreement. Plaintiff's FDUTPA claim is therefore governed by the forum selection clause."). The Court recognizes that in certain circumstances, an FDUTPA claim might arise outside the language of a forum-selection clause, such as where a claim is unrelated to an agreement between two parties. However, for the reasons discussed below, the Court finds that is not the circumstance in this case and, here, the FDUTPA allegations asserted in the Amended Complaint fall squarely within the scope of the TOS's forum-selection clause.

In this case, YouTube's TOS includes broad language encompassing "[a]ll claims arising out of or relating to these terms or the Service." TOS at 7. The TOS also includes provisions stating:

> Your use of the Service is subject to these terms, the YouTube Community Guidelines and the Policy, Safety and Copyright Policies which may be updated from time to time. . . .

> If you choose to upload Content, you must not submit to the Service any Content that does not comply with this Agreement (including the YouTube Community Guidelines) or the law. . . .

> You grant to YouTube the right to monetize your Content on the Service (and such monetization may include displaying ads on or within Content or charging users a fee for access). This Agreement does not entitle you to any payments. . . .

> If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion. . . .

> YouTube may suspend or terminate your access, your Google account, or your Google account's access to all or part of the Service if (a) you materially or repeatedly breach this Agreement; (b) we are required to do so to comply with a legal requirement or a court order; or (c) we believe there has been conduct that creates (or could create) liability or harm to any user, other third party, YouTube or our Affiliates. . . .

> We will notify you with the reason for termination or suspension by YouTube unless we reasonably believe that to do so: (a) would violate the law or the direction of a legal enforcement authority, or would otherwise risk legal liability for

18

YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates. . . .

TOS at 3–6.

Plaintiffs' assertion that their claims do not arise under the forum-selection clause is premised entirely on their FDUTPA claims. Resp. at 11–13. Yet, in the Amended Complaint, Counts III and IV, which assert claims under FDUTPA, both explicitly reference the policies of YouTube as the basis for each claim. For example, in Count III, Plaintiffs allege that "Defendants have repeatedly failed to act in good faith and accordance with their stated policies regarding the removal, demonetization, and moderation of content on their platform." Am. Compl. ¶ 270. Likewise, Plaintiffs allege in Count IV that "Defendants have acted in ways contrary to their published standards regarding censorship (flagged, demonetized, etc.)." *Id.* ¶ 286. Thus, the Court finds Plaintiffs' assertion that the "[t]he case before the Court is independent of any agreement that may exist between Plaintiffs and Defendants," Resp. at 13, is untethered to the allegations in the Amended Complaint. To the contrary, the FDUTPA claims are inextricably linked to the aforementioned provisions of the TOS, based upon the allegations included in the Amended Complaint. For these reasons, the Court finds that the FDUTPA claims are covered by the forum-selection clause in the TOS.

The Court's finding is consistent with the Eleventh Circuit's interpretation of forum-selection clauses containing the words "arising out of" to broadly cover "all causes of action arising directly or indirectly from the business relationship evidenced by the contract." *See Stewart*, 810 F.2d at 1070; *see also Loomer v. Facebook, Inc*., 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) ("The terms of the forum-selection clause are broad. The forum-selection clause

applies to 'any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products.'").

> ### 4. Plaintiffs Have Not Met Their Burden to Show This Case Should Not Be Transferred Pursuant to the Forum-Selection Clause.

Defendants contend that there are no public-interest factors that disfavor a transfer to the Northern District of California because: (1) Plaintiffs do not demonstrate an administrative difficulty that would arise from a transfer, (2) this is not a localized controversy, and (3) this case primarily involves issues of federal law. Mot. at 15–18.

In response, Plaintiffs contend that the public interest compels the Court to retain jurisdiction in this action for five reasons. Resp. at 13. First, Plaintiffs argue that the FDUTPA claims asserted in Counts III and VI make this a "localized controversy" and are unique to Florida. *Id*. at 13–14. Second, several Plaintiffs, including Plaintiff Trump, are residents of Florida. *Id*. at 14. Third, Plaintiffs analogize this case to *Seaman v. Priv. Placement Cap. Notes II, LLC*, No. 16-CV-00578-BAS-DHB, 2017 WL 1166336, at *1 (S.D. Cal. Mar. 29, 2017), where a court found that exceptional circumstances outweighed enforcing a valid forum-selection clause. *Id*. at 14–15. Fourth, Plaintiffs contend that the relative bargaining positions between YouTube and its customers is a consideration that weighs against the transfer of this case to Northern District of California. *Id*. at 16–17. Fifth, Plaintiffs also point to concerns raised by U.S. Supreme Court Justice Clarence Thomas regarding Section 230 in an opinion on a petition denying a writ of certiorari. *Id*. at 17–18 (citing *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 14 (2020)).

In reply, Defendants argue that that there is no rule against applying a forum-selection clause to FDUTPA claims and points out that several courts have done so. Reply at 7. Defendants argue that Plaintiffs have failed to carry the high burden of showing that public-interest factors

"overwhelmingly disfavor a transfer." *Id*. at 9 (citing *Atl. Marine*, 571 U.S. at 67). Defendants also point out that issues in this suit are not localized in Florida because: (1) other Plaintiffs reside in Colorado and New York, (2) one Plaintiff is an organization based in Washington, D.C., (3) Defendants are based in California, and (4) Plaintiffs seek to invalidate a federal statute. *Id*. at 9.

"[A] proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59–60 (citation omitted). Where the parties have agreed to a forum-selection clause, a court evaluating a motion to transfer should "afford no weight to either the plaintiff's selected forum or the parties' private interests, and [should] ignore the choice-of-law rules of the original venue." *Hisey*, 753 F. App'x at 703 (citing *Atl. Marine*, 571 U.S. at 62–65). In such circumstances, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine*, 571 U.S. at 64. Typically, a plaintiff may seek to overcome this burden by showing that the public interest favors the preselected forum. *Id.* Plaintiffs bear a high burden in this regard. *Id*. as 67 (stating that a plaintiff "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer"). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id*. at 64 (quoting *Piper Aircraft*, 454 U.S. at 241 & n.6).

Here, the Court finds that Plaintiffs have not satisfied their burden of demonstrating that the forum-selection clause, to which they all agreed, should not be enforced in this case.

The Court finds that this case does not present a localized controversy that favors keeping this litigation in the Southern District of Florida. To the contrary, this case involves issues that are national in scope, for the following reasons. First, although some Plaintiffs, including Plaintiff

Trump, are in Florida, others are located around the country in Colorado, New York, and Washington, D.C.  Am. Compl. ¶¶ 16–25.  Second, YouTube is headquartered in California.  *Id.* ¶ 27.  Third, Plaintiffs are suing Defendants on behalf of a nationwide class.  *Id.* ¶¶ 302–310.  And fourth, Plaintiffs invoke the First Amendment of the U.S. Constitution to invalidate a federal statute.  *Id.* ¶¶ 235–254.[7]

This case is highly distinguishable from the circumstance in *Seaman*.  In that case, which arose from an SEC enforcement action, the court found that the public interest weighed against the application of a forum-selection clause because: (1) litigating in another forum would increase costs on a receiver that had been appointed, thereby decreasing the funds available to investors and creditors; (2) the largest concentration of defrauded investors was located in Southern District of California; and (3) the fallout and damage from the alleged fraudulent conduct was "overwhelmingly" concentrated in that district.  *Seaman*, 2017 WL 1166336, at *7.  None of these concerns are present in this case, where Plaintiffs are located around the country and pursue their claims on behalf of a nationwide class.  Moreover, Plaintiffs have not suggested that there would be any administrative or cost-related obstacles to litigating this case in California.

Plaintiffs remaining arguments relate to: (1) the bargaining power of YouTube's customers, (2) the "addictive" nature of social media, and (3) and Justice Thomas's views on Section 230.  Resp. at 13–18.  These arguments are not directly related to the sorts of public-interest considerations that weigh against applying a forum-selection clause.  *Atl. Marine*, 571 U.S. at 64 ("Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest

---

[7]  To the extent Plaintiffs argue that the presence of FDUPTA claims create a public interest in favor of keeping this case in Florida, the Court finds that argument to be without merit for the reasons stated above.

in having the trial of a diversity case in a forum that is at home with the law.'" (quoting *Piper Aircraft Co.*, 454 U.S. at 241 & n.6)).  Moreover, they have nothing to do with a public interest that favors keeping this case in the Southern District of Florida, in particular.  Thus, the Court finds that these considerations do not weigh against the application of the forum-selection clause in this case.[8]

For the reasons discussed above, the Court finds that Plaintiffs have failed to meet their burden of "showing that public-interest factors overwhelmingly disfavor a transfer."  *Atl. Marine*, 571 U.S. at 64.

## IV.   CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1.  Defendants' Motion to Transfer to the Northern District of California (ECF No. 64) is GRANTED.

2.  The above-captioned case is hereby TRANSFERRED to the Northern District of California.

---

[8]  Additionally, the Court notes that Plaintiffs' arguments as to the bargaining power of YouTube's customers with respect to the TOS speaks to whether the TOS are unconscionable.  Thus, these arguments are more related to the enforceability of the contract, rather than the issue of whether the public interest favors keeping this case in the Southern District of Florida despite the existence of an enforceable forum-selection clause.  In any event, the Court agrees with other courts that have found that the bargaining power between social media companies and their customers does not render a forum-selection clause to be unconscionable.  *See Loomer*, 2020 WL 2926357, at *3 ("[w]hile the Terms are presented on a take-it-or-leave-it basis, Plaintiff was under no obligation to enter into the agreement.  Social media is not a requirement of life and there are other social media platforms available to Plaintiff.  Thus, her argument that the entire agreement between the parties, including the forum-selection clause, is unconscionable fails.").

3. The Clerk of Court is hereby INSTRUCTED to TRANSFER the docket and record of the above-captioned case to the Clerk of Court for the Northern District of California.

4. The Clerk of Court is INSTRUCTED to CLOSE this case.

5. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this __6th__ day of October, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record